IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02244-PSF-MJW

GREG R. THOME;
G T REED AND ASSOCIATES, LLC;
JAMES E. MEINE;
SCOTT A. MOSER;
WILLIAM F. MEINE;
GLNA, LLC;
GENE F. LANG & CO.;
TOM WHEATLEY;
PURE SOURCE ENERGY, LLC;
and WHEATLEY OIL COMPANY,

    Plaintiffs,

v.

LAYNE ENERGY SYCAMORE, LLC;
and SHAWNEE OIL & GAS, L.L.C.,

    Defendants.

## ORDER ON MOTION TO COMPEL ARBITRATION

This matter is before the Court on Defendants' Motion to Compel Arbitration (Dkt. # 12), filed January 5, 2006. This Court held a hearing on the motion on May 25, 2006. The motion is fully briefed and ripe for determination.

**I. BACKGROUND**

This case involves various breach of contract claims as well as requests for equitable relief by plaintiffs in relation to certain oil and gas leasehold rights in southeast Kansas. Plaintiffs' rights to overriding royalty interests ("ORRI"), the amounts of which are the subject of this dispute, were created by a series of written

agreements between Plaintiff GLNA, LLC and defendants. Specifically, Defendant Shawnee Oil & Gas entered a joint venture with GLNA to acquire, own and develop coalbed methane gas leases in southeast Kansas, and signed a Development Agreement dated August 14, 2002 setting forth the details of their joint venture. Under the Development Agreement, GLNA and Shawnee would each own an undivided 50% working interest in the leases, and GLNA would receive a 5% ORRI in the leases. This 5% ORRI was subject to reduction or even elimination so that the net revenue interest of the oil and gas leases within the area would not be less than 82.5%. The Development Agreement contained a forum selection clause mandating dispute resolution in the federal district courts of Colorado.[1]

Eventually, GLNA sought to withdraw from and terminate the joint venture, and agreed to sell its 50% working interest to Defendant Layne Energy Sycamore, LLC. This transaction was set out in a Purchase and Sale Agreement ("Purchase Agreement") dated February 1, 2004. The Purchase Agreement stated that GLNA would retain its right to the 5% ORRI in those leases, part of which GLNA had previously assigned to two of the plaintiffs.[2] The Purchase Agreement also contained an arbitration provision, mandating that "[i]n the event of a dispute, the matter in

---

[1] Part 14 of the Development Agreement provides that "[t]his Agreement and the transactions contemplated thereby and any dispute resolution or arbitration conducted pursuant hereto shall be construed in accordance herewith and governed by the laws of the state of Kansas, and GLNA and Participant hereby subject themselves to the sole and exclusive jurisdiction of the federal courts located in Colorado for resolution of any dispute related to this Agreement."

[2] According to the Complaint, plaintiffs Tom Wheatley and Pure Source Energy, LLC received their assignments on November 27, 2003, prior to the Purchase Agreement. *See* Compl. at ¶ 20.

Case 1:05-cv-02244-PSF-MJW   Document 25   Filed 05/30/06   USDC Colorado   Page 3 of 8


controversy shall be determined by binding arbitration upon the written request of any party hereto." Purchase Agreement at § XII, attached as Ex. B to Defs.' Br. Supp. Mot.

## II. MOTION TO COMPEL

### A. Defendants' Position

Defendants in their motion argue that the Purchase Agreement indicates that parties expressly agreed to arbitrate any disputes, and that the Purchase Agreement "superseded and replaced" the Development Agreement. *See* Defs.' Br. Supp. Mot. at 13. Defendants contend that all plaintiffs, even though only GLNA was a signatory to the Purchase Agreement and even though two of them acquired their rights from GLNA prior to the Purchase Agreement, should be required to arbitrate under estoppel theories, as they receive a "direct benefit" from the contract containing the arbitration clause. Further, the Purchase Agreement was expressly binding upon the successors and assigns of GLNA, and "the terms of the assignment by which GLNA retained its overriding royalty interest were expressly declared to be covenants running with the land and with each transfer or assignment of those overrides." *Id.* at 15. Defendants also note that in order to determine the parties' respective rights relating to the ORRI, a court would need to interpret several provisions of the Purchase Agreement. *See* Defs.' Reply at 1.

In the alternative, defendants ask that this Court require GLNA to arbitrate its disputes, and to stay the remainder of this litigation pending the outcome of that arbitration. Plaintiffs do not directly challenge this alternative request, although they deny that GLNA or any other plaintiff is required to arbitrate.

### B. Plaintiff's Position

Plaintiffs agree with defendants' recitation in their motion of the federal policy favoring arbitration, but contend that their interests in the ORRI are based on the Development Agreement, and the arbitration clause in the Purchase Agreement does not apply. *See* Pls.' Resp. at 4. Rather, they assert that the exclusive forum selection clause from the Development Agreement applies. Plaintiffs maintain that the Purchase Agreement did not terminate the Development Agreement with respect to the ORRI. *Id.* at 7-8. The arbitration clause is alleged to only apply to disputes arising out of the Purchase Agreement, and thus parties have not agreed to arbitrate this dispute, which arises out of the Development Agreement. Plaintiffs also argue that any ambiguity as to whether the arbitration provision covers disputes other than those arising out of the Purchase Agreement should be construed against the drafter–the defendants. *Id.* at 9.

In the alternative, only GLNA should be compelled to arbitrate as the sole signatory to the PSA. *Id.* Plaintiffs contend that the nonsignatory plaintiffs do not actually receive a benefit from the Purchase Agreement, but only from the Development Agreement, and thus estoppel principles do not apply. Plaintiffs argue that because the assignments were made prior to the execution of the Purchase Agreement, a provision in the Purchase Agreement making the terms of the assignments of the ORRIs to be covenants running with the land does not apply to prior assignees. *Id.* at 10.

### C. Analysis

Federal law favors arbitration and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Although this presumption does not apply in resolving doubts as to whether parties actually reached an agreement to arbitrate, *see Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998), there is no question here that GLNA agreed to arbitrate "[i]n the event of a dispute" with defendants. *See* Purchase Agreement at § XII. An earlier forum selection clause favoring federal courts in Colorado was clearly terminated by the language of the subsequent Purchase Agreement, which called for termination of the earlier agreement (except as otherwise provided) and contained a clear arbitration clause. *Id.* at §§ V(A), XII; *cf. Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989) ("In the absence of contractual language expressly or implicitly indicating the contrary, a forum selection clause survives termination of the contract. . . . The intent of the parties as to the continued applicability of a forum selection clause controls.").

Because GLNA and defendants clearly agreed to arbitrate, the presumption in favor of arbitration now applies to determining the scope of the arbitration clause. Plaintiffs contend that the arbitration clause only applies to disputes arising from the Purchase Agreement, which they claim serves only to terminate the relationship between GLNA and Layne Energy Sycamore. *See* Pls.' Resp. at 8. However, the language on its face is actually much broader, stating that "[i]n the event of a dispute," the parties shall arbitrate. Purchase Agreement at § XII. The Purchase Agreement

also specifically discusses and provides for the retained ORRI at issue. *See id.* at §
V(E). In light of the presumption favoring arbitration, the instant clause covers the
dispute between GLNA and defendants. Further, because all plaintiffs derive their
interest from GLNA, they are also subject to the arbitration clause.[3] *See Internat'l
Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir.
2000) (a "nonsignatory is estopped from refusing to comply with an arbitration clause
when it receives a 'direct benefit' from a contract containing an arbitration clause").
Here, plaintiffs derive a benefit from the Purchase Agreement through GLNA–their
assigned interest in the retained ORRI that is provided for in the Purchase Agreement.

Other language in the Purchase Agreement supports the conclusion that the
arbitration provision applies. In § I(A)(h), Layne Energy Sycamore, as buyer, "shall
purchase from Seller [GLNA], all of Seller's right, title and interest in and to all of the
assets, properties and rights of Seller described as follows: the Development
Agreement." Such language suggests that any rights, such as venue in the federal
courts of Colorado, under the Development Agreement were in effect "purchase[d]" by
defendants.

---

[3]The parties have given no indication that any plaintiff was unaware of the possibility that GLNA's rights vis-á-vis defendants could contractually change. Rather, defendants presented evidence at the hearing that plaintiffs Pure Source Energy and Tom Wheatley were members of GLNA and sometimes agents of GLNA. *See* Tr. at 6:22-9:23. Further, because the relationship between assignees and defendants is controlled by GLNA and plaintiffs' interests are derivative from GLNA's, the analysis set forth in the Tenth Circuit's unpublished decision in *Altresco Philipines, Inc. v. CMS Generation Co.*, 111 F.3d 140 (Table) (10th Cir. 1997) does not apply. *See id.* at *5 (refusing to require nonsignatories to an arbitration clause, that had independent contractual relationship with a party to the arbitration clause, to arbitrate even though they were allegedly "in privity" with signatories to the clause).

6

The Purchase Agreement's language also redefines the original ORRI as the Retained Override Interest, such that any ORRI interest is now based upon the Purchase Agreement and not the Development Agreement creating the original ORRI. Plaintiffs' failure to reference the Purchase Agreement in their Complaint is not dispositive.  See *In re Oil Spill by the "Amoco Cadiz" off the Coast of France*, 659 F.2d 789, 794 (7th Cir. 1981) ("Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause.") (cited by *Altresco Philippines, Inc.*, 111 F.3d 140 at *3). Here, the plaintiffs' claims are clearly related to the Purchase Agreement and the arbitration clause.

Although the Purchase Agreement specifically states that "*[e]xcept as otherwise specifically provided herein*, the Development Agreement shall terminate" (Purchase Agreement at § V(A)) (emphasis added), suggesting that the Development Agreement does continue on in some form independently, it appears that the exception refers to § V(C), which states that seller shall continue to be bound by the confidentiality provisions of the Development Agreement.  Section V(E), which provides the Retained Override Interest, does not mention the Development Agreement at all and functions as an independently standing provision.

Finally, in the Assignment and Bill of Sale section of the Purchase Agreement, it states that "[t]he terms, covenants and conditions contained in this Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns."  Admittedly, this section goes on to state that "such terms,

covenants and conditions shall be covenants running with the land and with each *subsequent* transfer or assignment of the Properties, or any part thereof" (emphasis added), suggesting that the earlier assignments at issue here are not subject to the later Purchase Agreement. Ultimately, however, GLNA as assignor of the other plaintiffs' interests had the right to alter the forum selection clause applicable to all of them vis-á-vis defendants. As plaintiffs admitted in the hearing on this motion, the other plaintiffs' rights are derivative of GLNA's by virtue of their having been assigned to them by GLNA. *See* Tr. 26:16-23, 27:22-28:6.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Compel Arbitration (Dkt. # 12). The case is administratively closed pursuant to D.C.COLO.LCivR 41.2 subject to possible reopening upon completion of the arbitration by motion of any party having shown good cause.

DATED: May 30, 2006

BY THE COURT:

*s: Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge